IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CARDEROCK COMMUNICATIONS, LLC

       v.                     :    Civil Action No. DKC 25-3093

T-MOBILE NORTHEAST LLC, et al.

    :

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this breach of contract case is the motion to dismiss filed by T-Mobile Northeast LLC ("T-Mobile Northeast"), T-Mobile USA, Inc. ("T-Mobile USA"), APC Realty and Equipment Company LLC ("APC Realty"), and Sprint (a/k/a Sprint Corporation) (collectively, "Defendants"). (ECF No. 9). The issues have been briefed, and the court now rules, no hearing being deemed necessary. Local Rule 105.6. For the following reasons, the motion to dismiss will be granted in part and denied in part.

## I.   Background

Carderock Communications, LLC ("Carderock" or "Plaintiff") owns a telecommunications tower in Bethesda, Maryland. (ECF No. 2 ¶¶ 1, 10). Carderock licensed space on the communications tower to multiple entities, including T-Mobile Northeast and APC Realty. T-Mobile Northeast, which is owned by T-Mobile USA, engages in telecommunications work within Maryland. (*Id*. ¶¶ 2, 3). APC

Realty similarly engages in telecommunications work in Maryland and is affiliated with Sprint.[1]  (*Id*. ¶¶ 4, 5).

In June 2017, Carderock entered into a license agreement with T-Mobile Northeast ("T-Mobile Northeast Agreement"), which allowed T-Mobile Northeast to "install and maintain permitted equipment and to transmit and receive" from Carderock's telecommunications tower.  (*Id*. ¶¶ 10, 13).  The T-Mobile Northeast Agreement lists "T-Mobile" as the carrier.  (*Id*. ¶ 15).  Carderock had entered into a similar license agreement with APC Realty in January 2013 ("APC Agreement"), which listed its carrier as Sprint Nextel. (*Id*. ¶¶ 17, 18).

Both the T-Mobile Northeast Agreement and the APC Agreement contained clauses whereby Carderock would continue to be compensated if one of its licensees merged or had a "business combination" with another licensee. (*Id*. ¶¶ 25-27).  The relevant provision of the T-Mobile Northeast Agreement, section 2.2.h, reads:

> Notwithstanding anything contained in this agreement to the contrary, if Licensee acquires, merges with, forms any business combination with, or acquires all or substantially all of the assets of any other licensee which is located on the Tower or holds a license, sublicense, lease or sublease

---

[1] According to Defendants' corporate disclosures, APC Realty's sole member is Sprint Spectrum LLC.  (ECF No. 13 ¶ 4).  Sprint Spectrum LLC's sole member is Sprint LLC, whose sole member is T-Mobile USA.  (*Id*.).

> for this Property or Premises (a "co-licensee"), Licensee may not terminate this Agreement pursuant to Section 2.2(e)(ii) or Section 2.2(f) within (60) calendar months of the completion of such transaction and the then existing term of this License will remain in full force and effect until the date that that is sixty (60) calendar months from the completion of the transaction or the conclusion of the then existing term, whichever is longer.  In the event that any co-licensee terminates its license under any provision therein that is substantially similar to Section 2.2(e)(ii) or Section 2.2(f) of this Agreement, or if the co-licensee's license expires within (60) calendar months of the completion of the transaction, Licensee shall pay Licensor all sums that otherwise would have been paid to Licensor by such co-licensee as if the license had not been so terminated or the license had not expired until sixty (60) months after the completion of the transaction.

(*Id.* ¶ 25).  The relevant provision of the APC Agreement, also section 2.2.h, is slightly different:

> Notwithstanding anything contained herein to the contrary, if Licensee acquires or merges with any other licensee which is located on the tower or holds a license, sublicense, lease or sublease for this Property or Premises, Licensee may not terminate or cause such licensee to terminate the license agreement of such acquired or merged licensee pursuant to Section 2.2(e)(ii) or Section 2.2(f) of this Agreement or such licensee's agreement within (60) calendar months of the completion of a merger with or, acquisition of, licensee.

(*Id.* ¶ 26).  Sprint Corporation and T-Mobile USA, Inc. merged "on or about April 1, 2020."  (*Id.* ¶ 28).  Following the merger,

3

Carderock received a letter dated April 15, 2021, addressed to "Sprint Cell Site Landlord." (*Id*. ¶ 34). The letter, printed on letterhead showing both Sprint and T-Mobile, "informed all 'Sprint Cell Site Landlords' that 'T-Mobile and Sprint are now one!' and discussed how the 'two companies' will transition to 'integrate' into one."[2] (*Id*.). T-Mobile Northeast provided an application revision in March 2021 listing frequencies that were also listed in the APC Agreement. (*Id*. ¶¶ 35, 36). T-Mobile USA began paying a monthly license fee to Carderock for both the APC Agreement and the T-Mobile Northeast Agreement, including both in a single check as a lump sum payment. (*Id*. ¶ 39; ECF No. 15-5, at 4).

In August 2022, APC Realty sent a non-renewal notice ahead of the end of the contract term which purported to allow the APC

---

[2] Carderock muddies the complaint by referring to the Defendants interchangeably. Plaintiff first states "T-Mobile USA, Inc. and T-Mobile Northeast LLC are referred to herein, where appropriate, as T-Mobile," (ECF No. 2 ¶ 3), then later says that *all* Defendants can be referred to as T-Mobile, (*Id*. ¶ 7). Defendants dispute that all four are functionally one and the same – "a merger involving T-Mobile Northeast's parent company does not mean T-Mobile Northeast (a separate legal entity) entered into a business combination with Sprint (or APC Realty)." (ECF No. 9-1, at 12). Because the status of corporate subsidiaries following the merger is a legal conclusion, the court does not owe deference to Plaintiff's understanding of the corporate structure on a motion to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).

Agreement to expire on January 30, 2023.  (ECF No. 15-6, at 2).[3]

Under Section 2.1 of the APC Agreement:

> The term of this Agreement shall begin on the Commencement Date, and terminate at 11:59PM on the day before the tenth (10th) anniversary of the Commencement Date ("Initial Term") unless otherwise terminated as provided in this Agreement.  Provided Licensee is not in default of its obligations hereunder, Licensee shall have the right to extend the Term for two (2) successive five (5) year periods (each, a "Renewal Term") on the same terms and conditions as set forth herein.  This Agreement shall automatically be extended for such successive Renewal Terms unless Licensee notifies Licensor of its intention not to renew this Agreement at least one hundred twenty (120) days prior to the commencement of the succeeding Renewal Term.

(ECF No. 15-1, at 3).  Carderock stopped receiving payments pursuant to the APC Agreement after the agreement expired.  (ECF No. 2 ¶ 48).  The end of the APC Agreement term was approximately three years after the merger between Sprint and T-Mobile USA.

Carderock alleges that Defendants were obliged to continue making payments for APC Realty under the T-Mobile Northeast Agreement for a full sixty months after the merger between Sprint and T-Mobile USA.  (*Id*. ¶ 51).  When payment was requested, Defendants responded that nothing in the APC Agreement barred its

---

[3] ECF No. 15 contains the exhibits that were originally attached to the complaint when it was filed in state court.  Such exhibits are part of the complaint and thus appropriate to consider on a motion to dismiss.  Fed.R.Civ.P. 10(c); *see Faulkenberry v. U.S. Dep't of Def.*, 670 F.Supp.3d 234, 249 (D.Md. 2023).

expiration, (ECF No. 15-7, at 2-3), and the merger of the two parent companies did not create any obligations under the T-Mobile Northeast Agreement, (ECF No. 15-8, at 2-3).

Carderock filed a complaint in the Circuit Court for Montgomery County on August 15, 2025, (ECF No. 2), and Defendants removed to this court on September 17, 2025, (ECF No. 1).  The complaint brings five counts: breach of contract by T-Mobile Northeast and T-Mobile USA (Count I), breach of contract by APC Realty and Sprint (Count II), intentional misrepresentation by T-Mobile Northeast and T-Mobile USA (Count III), intentional misrepresentation by APC Realty and Sprint (Count IV), and quantum meruit against T-Mobile Northeast and T-Mobile USA (Count V). Defendants filed a motion to dismiss on September 24, 2025.  (ECF No. 9).  Carderock filed an opposition on October 8, 2025, (ECF No. 14), and Defendants filed a reply on October 15, 2025, (ECF No. 16).

## II.  Standard of Review

A motion to dismiss under Fed.R.Civ.P. 12(b)(6) tests the sufficiency of the complaint. *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006).  The court "must accept the complaint's factual allegations as true and construe the facts in the light most favorable to the plaintiff."  *Barnett v. Inova Health Care Servs.*, 125 F.4th 465, 469 (4th Cir. 2025) (citing

6

*Barbour v. Garland*, 105 F.4th 579, 589 (4th Cir. 2024)).   A complaint must only satisfy Rule 8(a)(2), which requires a "short and plain statement of the claim showing that the pleader is entitled to relief."  Fed.R.Civ.P. 8(a)(2).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) (quoting Fed.R.Civ.P. 8(a)(2)).  A Rule 8(a)(2) "showing" requires "stat[ing] a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that defendant is liable for the misconduct alleged."  *Mays v. Sprinkle*, 992 F.3d 295, 299–300 (4th Cir. 2021) (quoting *Iqbal*, 556 U.S. at 678).  Legal conclusions couched as factual allegations are insufficient, *Iqbal*, 556 U.S. at 678, as are conclusory factual allegations devoid of any reference to actual events, *United Black Firefighters of Norfolk v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).  The court may consider documents attached to the complaint on a motion to dismiss, as well as documents integral to the complaint that are attached to the motion to dismiss if there is no dispute about their authenticity. *Faulkenberry,* 670 F.Supp.3d at 249.

A fraud claim is subject to the heightened pleading standard of Fed.R.Civ.P. 9(b).  *Harrison v. Westinghouse Savannah River Co.*, 176 F.3d 776, 783 (4th Cir. 1999).  Rule 9(b) provides that, "in alleging fraud or mistake, a party must state with particularity the circumstances constituting the fraud or mistake. Malice, intent, knowledge and other conditions of a person's mind may be alleged generally."  The circumstances required to be pleaded with particularity "include the 'time, place and contents of the false representation, as well as the identity of the person making the misrepresentation and what [was] obtained thereby.'" *Superior Bank, F.S.B. v. Tandem Nat'l Mortg., Inc.*, 197 F.Supp.2d 298, 313–14 (D.Md. 2000) (*quoting Windsor Assocs., Inc. v. Greenfeld*, 564 F.Supp. 273, 280 (D.Md. 1983)).  The purposes of Rule 9(b) are to provide the defendant with sufficient notice of the basis for the plaintiff's claim; to protect the defendant against frivolous suits; to eliminate fraud actions where all the facts are learned only after discovery; and to safeguard the defendant's reputation.  *Harrison*, 176 F.3d at 784.

## III. Analysis

Plaintiff's complaint only plausibly alleges a subset of its claims.  Counts II, III, and IV, in their entirety, and V, against T-Mobile Northeast, will be dismissed. Counts I, in its entirety, and V, against T-Mobile USA, will move forward.

**A.   Count I: Breach of Contract by T-Mobile Northeast and T-Mobile USA**

Under the language of the T-Mobile Northeast Agreement, Plaintiff has sufficiently alleged a breach of contract claim against T-Mobile Northeast and T-Mobile USA.  Both the interpretation of a contract and whether a contract is ambiguous are ordinarily questions of law for the court.[4]  *Tate v. Am. Gen. Life Ins. Co.*, 627 F.Supp.3d 480, 490 (D.Md. 2022) (citing *Grimes v. Gouldmann*, 232 Md.App. 230, 235 (2017); *Calomiris v. Woods*, 353 Md. 425, 434 (1999)).  "The elements of a claim for breach of contract include 'contractual obligation, breach, and damages.'" *Tucker v. Specialized Loan Servicing, LLC*, 83 F.Supp.3d 635, 655 (D.Md. 2015) (quoting *Kumar v. Dhanda*, 198 Md.App. 337, 345 (Md.Ct.Spec.App. 2011)).

Plaintiff alleges that the two Defendants breached the obligations triggered by the "merger or business combination" between the T-Mobile and Sprint parent companies.  (ECF No. 2 ¶ 48).  The parties agree that both Carderock and T-Mobile Northeast had contractual obligations under the T-Mobile Northeast Agreement, (*Id.* ¶ 10; ECF No. 9-1, at 4), and Carderock has alleged damages stemming from the breach, (ECF No. 2 ¶ 54).  The only

---

[4] This case was removed to this court from the Circuit Court for Montgomery County, (ECF No. 1), and both parties agree that Maryland law applies, (ECF Nos. 9-1, at 2; 14, at 19).

element in dispute is the breach itself. Following a merger or business combination with another co-licensee on the Carderock tower, the T-Mobile Northeast Agreement contemplates paying under the terms of a contract with a merged licensee for a full five years:

> In the event that any co-licensee terminates its license under any provision therein that is substantially similar to Section 2.2(e)(ii) or Section 2.2(f) of this Agreement, or if the co-licensee's license expires within (60) calendar months of the completion of the transaction, Licensee shall pay Licensor all sums that otherwise would have been paid to Licensor by such co-licensee as if the license had not been so terminated or the license had not expired until sixty (60) months after the completion of the transaction.

(ECF Nos. 2 ¶ 25; 15, at 4). In their motion to dismiss, these two Defendants seem to acknowledge that APC Realty is a "co-licensee" of T-Mobile Northeast under this provision following the merger of T-Mobile USA and Sprint. (ECF No. 9-1, at 9). Defendants point only to the *first* triggering provision, however, saying it could come into play if APC Realty "terminates its license under any provision therein that is substantially similar to Sections 2.2(e)(ii) or Section 2.2(f)." (*Id.*). Because APC Realty did not terminate its license, they argue, no obligation arose for T-Mobile Northeast. But the T-Mobile Northeast Agreement contemplates a second triggering possibility: if "the co-licensee's license expires within (60) calendar months of the

10

completion of the transaction." Under this second triggering event, T-Mobile Northeast had an obligation to pay Carderock "all sums that otherwise would have been paid to [Carderock] by [APC Realty] as if. . . the license had not expired until sixty (60) months after the completion of the transaction." (ECF Nos. 2 ¶ 25; 15, at 4).

Seemingly realizing their error, Defendants argue in their reply that the provision is inapplicable because *T-Mobile Northeast* did not merge with APC Realty. (ECF No. 16, at 4). But section 2.2.h does not require a formal merger between the licensees. Rather, section 2.2.h is relevant "if [T-Mobile Northeast] acquires, merges with, forms any business combination with, or acquires all or substantially all of the assets of any other licensee which is located on the Tower or holds a license . . . for this Property or Premises (a 'co-licensee')." (ECF No. 2 ¶ 25). The term "business combination" is not defined in the T-Mobile Northeast Agreement. The agreement does contain a requirement, however, that "[T-Mobile Northeast] shall only use frequencies owned by [T-Mobile Northeast] and granted use of the frequencies by the FCC." (*Id*. ¶ 16). The APC Agreement contains the same requirement. (*Id*. ¶ 24). In March 2021, T-Mobile Northeast "obtained use of APC Realty's spectrum (as Spring Nextel frequencies)," which Carderock alleges triggered section 2.2.h of

11

the agreement.  (*Id*. ¶ 30).  When combined with the communications about T-Mobile USA making payments related to both entities after the parent companies' merger, Carderock has plausibly alleged that T-Mobile Northeast was in a "business combination" with APC Realty. The motion to dismiss will be denied for the breach of contract claim against T-Mobile Northeast.

The analysis differs for T-Mobile USA.  "As a general rule, 'a contract cannot be enforced by or against a person who is not a party to it.'"  *Cecilia Schwaber Tr. Two v. Hartford Accident & Indem. Co.*, 437 F.Supp.2d 485, 489 (D.Md. 2006) (quoting *Crane Ice Cream Co. v. Terminal Freezing & Heating Co.*, 147 Md. 588, 588 (Md. 1925)).  Carderock alludes to T-Mobile USA acting as a successor or assign of T-Mobile Northeast, (ECF No. 2 ¶ 43), as contemplated in Section 24.2 of the T-Mobile Northeast Agreement, (ECF No. 14, at 11 ("[T]erms and conditions contained in this Agreement will bind and inure to the benefit of the Parties, their respective . . . successors and assigns.")).  Carderock's only argument in support of T-Mobile USA's status as a successor or assign is that T-Mobile USA made payments under the T-Mobile Northeast Agreement.  (*Id.*, at 4).  While it is unclear whether the payment is sufficient to give rise to succession or assignment, the materials attached to the complaint have plausibly alleged that T-Mobile USA accepted the contract after signing.

12

Parties can be bound by an agreement they did not sign if they later accept or adopt the contract. *Abbella Grp. Healthtech, LLC v. Qualivis, LLC*, No. 24-cv-00331-JMC, 2025 WL 2430018, at *7 (D.Md. Aug. 22, 2025). Acceptance can be express or manifested through conduct. *Id.* Plaintiff has alleged sufficient facts to make it plausible that T-Mobile USA accepted the contract. In a letter addressed to "Sprint Landlords," Carderock was informed that "T-Mobile" would be taking over the payments for the sites affiliated with Sprint. (ECF No. 15-4). The attached checks show that T-Mobile USA made the payments for both the T-Mobile Northeast site and the APC Realty site, paying one lump sum for both agreements. (ECF Nos. 15-5; 2 ¶ 39). These facts support a plausible claim that T-Mobile USA accepted the T-Mobile Northeast Agreement and can be held liable for the breach. *See Porter v. Gen. Boiler Casing Co.*, 284 Md. 402, 414-15 (1979) (finding a fact issue of whether a non-signatory defendant meant to be bound by a union contract where it provided fringe benefits to union members); *Mehul's Inv. Corp. v. ABC Advisors, Inc.*, 130 F.Supp.2d 700, 708 (D.Md. 2001) (collecting cases about non-signatories manifesting their acceptance of contracts). The motion to dismiss will be denied for Count I.

13

**B.    Count II: Breach of Contract by APC Realty and Sprint**

Carderock has failed to allege sufficient facts to plead a plausible breach of contract claim against APC Realty.  Carderock asserts that allowing the APC Agreement to expire within sixty months of the merger between Sprint Corporation and T-Mobile USA, Inc. was a breach of section 2.2.h of the agreement.  (ECF No. 2 ¶¶ 58, 61-62).  Section 2.2.h of the APC Agreement differs from the provision in the T-Mobile Northeast Agreement.  In case of a merger or business combination, the APC Agreement only states that APC Realty "may not terminate or cause such licensee to terminate the license agreement of such acquired or merged licensee pursuant to Section 2.2(e)(ii) or Section 2.2(f) of this Agreement or such licensee's agreement within (60) calendar months of the completion of a merger with or, acquisition of, licensee."  (*Id*. ¶ 26).  Carderock argues that Section 2.2(f) applies here, which states in part:

> Licensee may terminate this Agreement. . . if Licensee determines that, due to no fault or action of Licensee, based on (i) technology, or (ii) changes in system design or system usage patterns, Licensee's use of the Licensed Premises (as the same may have been modified from time to time) is no longer consistent with the optimal technological operation of Licensee's communications system.

(*Id*. ¶ 56).  But Carderock does not allege that APC Realty terminated due to technology or changes in system design; rather,

14

Carderock acknowledges that APC Realty chose not to renew the contract at the end of the term, which is governed by Section 2.1. (*See* ECF Nos. 2 ¶ 41, 61; 15-7, at 2).  Carderock argues that the non-renewal was ineffective but does not dispute that it was timely; Carderock instead argues that the expiration of the term was also barred by the merger provision.  (ECF No. 14, at 10).

The unambiguous contract language cannot support such a reading.  The length of the APC Agreement and its renewal are governed by the "Term" provision in Section 2.1, which states the APC Agreement "shall automatically be extended . . . unless [APC Realty] notifies [Carderock] of its intention not to renew this Agreement at least one hundred twenty (120) days prior to the commencement of the succeeding Renewal Term."  (ECF No. 15-1, at 3).  This is separate from the "Termination" provision in Section 2.2, which contains the merger provision (Section 2.2.h) and the two reasons for termination barred by the merger provision (Sections 2.2(e)(ii) and 2.2(f)).  There is no bar within Section 2.2.h on allowing the APC Agreement to expire under Section 2.1 following a merger.  Count II will be dismissed against APC Realty.

The breach of contract claim against Sprint will also be dismissed.  Carderock alleged that Sprint was liable for a breach of the APC Agreement; because Carderock has failed to plead a breach of the APC Agreement, this claim necessarily fails.

15

**C.    Counts III and IV: Intentional Misrepresentation by All Defendants**

To plead intentional misrepresentation, Plaintiff must allege:

> (1) that the defendant made a false representation to the plaintiff; (2) that its falsity was either known to the defendant or that the representation was made with reckless indifference as to its truth; (3) that the misrepresentation was made for the purpose of defrauding the plaintiff; (4) that the plaintiff relied on the misrepresentation and had the right to rely on it; and (5) that the plaintiff suffered compensable injury resulting from the misrepresentation.

*Shulman v. Progressive Com. Cas. Co.,* No. 19-cv-1709-DKC, 2020 WL 758239, at *4 (D.Md. Feb. 14, 2020) (citing *Sass v. Andrew*, 152 Md.App. 406, 429 (2003); *Brass Metal Prods., Inc. v. E-J Enters., Inc.*, 189 Md.App. 310, 352 (2009)). Intentional misrepresentation claims are subject to the heightened pleading burden of Fed.R.Civ.P. 9(b), which provides "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge and other conditions of a person's mind may be alleged generally." Plaintiff has not pleaded facts supporting an intentional misrepresentation claim against any of the Defendants.

To meet the particularity required in Rule 9(b), Plaintiff must point to "the 'time, place and contents of the false representation, as well as the identity of the person making the

16

misrepresentation and what [was] obtained thereby.'" *Superior Bank, F.S.B.*, 197 F.Supp.2d at 313 (alteration in original) (quoting *Windsor Assocs., Inc.*, 564 F.Supp. at 280). The only specific representation that Plaintiff points to in support of its intentional misrepresentation claim is a letter from Patricia Hennelly, whom Plaintiff identifies as the Director of Legal Affairs for Sprint and T-Mobile,[5] dated August 9, 2023. (ECF No. 2 ¶¶ 66, 74). Carderock alleges that, within that letter, "T-Mobile Northeast falsely stated to Carderock that T-Mobile had not entered into a business combination with APC Realty and Sprint," (*Id.* ¶ 66), and APC Realty made essentially the same misrepresentation. The statement is much less black and white than Plaintiff paints it to be; the letter states Defendants' disagreement with Plaintiff's legal position about the impact of the merger between T-Mobile USA and Sprint Corporation on the T-Mobile Northeast Agreement. (ECF No. 15-8, at 2). Even if this statement could be considered a false representation, Plaintiff makes no argument about how it relied on this statement (which was clearly made after the parties had established their disagreement on how to read the contract), or how Plaintiff suffered an injury

---

[5] Ms. Hennelly's signature on the letter identifies her as "Director, Legal Affairs" but does not list her particular company. (ECF No. 15-8, at 4). The letter opens with a statement that "T-Mobile has reviewed [Plaintiff's] letter," and the letterhead includes logos for both Sprint and T-Mobile. (*Id.* at 2).

17

from this particular statement.  This is insufficient to state a claim of intentional misrepresentation against any of the Defendants.  Counts III and IV of the complaint will be dismissed.

**D.    Count V: Quantum Meruit against T-Mobile Northeast and T-Mobile USA**

Finally, Carderock brings a quantum meruit claim against both T-Mobile Northeast and T-Mobile USA.  Quantum meruit is a quasi-contractual cause of action meant to allow a plaintiff to receive compensation for its services in the absence of an enforceable contract.  *See J.E. Dunn Constr. Co. v. S.R.P. Dev. Ltd. P'ship*, 115 F.Supp.3d 593, 608 (D.Md. 2015); *United States ex rel. Delval Equip. Corp., Inc. v. E. Coast Welding & Constr. Co.*, No. 21-cv-1244-ELH, 2022 WL 717046, at *23 (D.Md. Mar. 10, 2022).  The claim is unavailable against T-Mobile Northeast, because an express contract governs the relationship between the parties.  "In Maryland, '[t]he general rule is that no quasi-contractual claim can arise when a contract exists between the parties concerning the same subject matter on which the quasi-contractual claim rests.'"  *J.E. Dunn Const. Co.*, 115 F.Supp.3d at 608 (alteration in original) (quoting *Cnty. Comm'rs of Caroline Cnty. v. J. Roland Dashiell & Sons, Inc.*, 358 Md. 83, 96 (2000)).  Carderock is seeking payment for the APC Agreement license fee after the APC Realty contract expired, as it asserts that T-Mobile Northeast is essentially receiving the benefits of both contracts for the price

18

of one.   (ECF No. 2, ¶¶ 84-87).   This is the same relief it is seeking through its breach of contract action, and both parties agree that there is an express contract between them.

While quantum meruit can be pleaded in the alternative alongside breach of contract claims, this situation is not applicable to T-Mobile Northeast.  "Although a plaintiff may plead in the alternative by asserting claims for [quantum meruit] and breach of contract, when doing so the 'plaintiff's claim for [quantum meruit] *must* include an allegation of fraud or bad faith in the formation of the contract.'"  *J.E. Dunn Constr. Co.*, 115 F.Supp.3d at 608 (quoting *Jones v. Pohanka Auto N., Inc.*, 43 F.Supp.3d 554, 573 (D.Md. 2014)).  Plaintiff does not allege any bad faith or fraud in relation to the formation of the contract; Plaintiff's intentional misrepresentation claims only arise from the representations made after the merger between the Sprint and T-Mobile parent companies, which was years after both contracts were formed.  Because there is an express written contract between the parties, quantum meruit is unavailable and the claim against T-Mobile Northeast will be dismissed.

Quantum meruit is available in the alternative against T-Mobile USA, however, because the existence of a contractual relationship between Carderock and T-Mobile USA is disputed. *See Swedish Civil Aviation Admin. v. Project Mgmt. Enters., Inc.*, 190

F.Supp.2d 785, 792 (D.Md. 2002) ("[A]lthough [plaintiff] may not recover under both contract and quasi-contract theories, it is not barred from pleading these theories in the alternative where the existence of a contract concerning the subject matter is in dispute." (second alteration in original)).  According to Maryland courts:

> Three elements must be established by a plaintiff to sustain a claim for quantum meruit: "(1) [a] benefit conferred upon the defendant by the plaintiff; (2) an appreciation or knowledge by the defendant of the benefit; and (3) the acceptance or retention by the defendant of the benefit under such circumstances as to make it inequitable for the defendant to retain the benefit without the payment of its value."

*J.E. Dunn Const. Co.*, 115 F.Supp.3d at 604-605 (alteration in original) (quoting *Paramount Brokers, Inc. v. Digit. River, Inc.*, 126 F.Supp.2d 939, 946 (D.Md. 2000)).  Plaintiff has sufficiently alleged all three elements.  T-Mobile USA received the benefit of both T-Mobile Northeast's space on Carderock's tower and APC Realty's space, while paying for only the use of T-Mobile Northeast's space.[6]  (ECF No. 2 ¶ 80).  Carderock has sufficiently

---

[6] Defendants bring up for the first time in reply that the use of Sprint's frequency is not a benefit that Carderock can directly confer, as the frequencies are granted by the Federal Communications Commission.  (ECF No. 16, at 7-8).  Plaintiff's complaint does discuss T-Mobile Northeast's possible use of frequencies belonging to Sprint in its complaint, (ECF No. 2 ¶¶ 80-81), but does not directly claim that it is a benefit conferred *by* Carderock.  In contrast, Plaintiff clearly states "[t]he use of

alleged that T-Mobile USA was aware of the benefit, as T-Mobile USA and T-Mobile Northeast continued to use the tower and premises following Carderock's protest about the lack of payment after the expiration of the APC Agreement.[7]   (*Id*. ¶¶ 84-86).   Finally, Plaintiff has alleged that T-Mobile USA's retention of the benefit would be inequitable, as Plaintiff argues the T-Mobile Northeast Agreement contemplates payments for Plaintiff under these circumstances.   Because it is unclear at this stage if T-Mobile USA is bound by the T-Mobile Northeast Agreement, the agreement does not bar a quantum meruit claim.   The motion to dismiss Count V against T-Mobile USA will be denied.

---

the Tower and Premises conferred a benefit upon Defendants," (*Id*. ¶ 82).   There is no question that the telecommunications tower and premises are a benefit controlled by Plaintiff, which is sufficient to survive a motion to dismiss.

[7] Also for the first time in their Reply, Defendants argue that they removed all APC Realty equipment from Carderock's tower and premises following the expiration of the APC Agreement.   (ECF No. 16, at 8-9).   The status of the APC Realty equipment is not included in the complaint, though some of the letters attached to the complaint discuss plans to remove the equipment after the APC Agreement expired.   (ECF Nos. 15-6 at 2; 15-7 at 3).   Defendants only moved to dismiss, however, based on the contract between T-Mobile Northeast and Carderock.   (ECF No. 9, at 14).   The factual question about whether T-Mobile USA is receiving the benefit of both spaces on Carderock's tower is inappropriate for resolution at the motion to dismiss stage.

## IV.  Conclusion

For the foregoing reasons, Defendants' motion to dismiss will be granted in part and denied in part.  A separate order will follow.

/s/

DEBORAH K. CHASANOW
United States District Judge
